UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOE SOLIS, | Case No. CV-06-02788 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| MICHAEL J. ASTRUE,[1] Commisioner of Social Security, | |
| Defendant. | |

### I. SUMMARY

On May 8, 2006, plaintiff Noe Solis ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; May 15, 2006 Case Management Order, ¶ 5.

---

[1] Michael J. Astrue is substituted as Commissioner of Social Security pursuant to F.R. Civ. Proc. 25(d)(1).

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand. The Administrative Law Judge ("ALJ") materially erred by rejecting plaintiff's treating physician's opinion without adequate findings and development of the record, and by finding plaintiff's subjective complaints of pain not credible without offering adequate findings.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about August 9, 2003, plaintiff filed an application for disability insurance benefits ("DIB"). (Administrative Record ("AR") 91-93). Plaintiff asserted that he became disabled on June 18, 2002, due to a back injury. (AR 91, 96). The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AR 68-71, 76-81). Plaintiff then requested a hearing, which was held before the ALJ on November 29, 2004. (AR 66, 328-44). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert and a vocational expert. (AR 328-44). After the hearing, consultative neurological examiner, Dr. Cleotilde Jose, evaluated plaintiff and offered an opinion concerning plaintiff's residual functional capacity. (AR 312-20).

On April 11, 2005, the ALJ determined that plaintiff was not disabled at any time through the date of the ALJ's decision. (AR 16-23). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: muscle sprain/strain at L4-5 with low back pain and herniated disc disease at L4-5 (AR 18, 22); (2) plaintiff's impairments did not meet or medically equal one of the listed impairments (AR 19, 22); (3) plaintiff retained the residual functional

capacity to perform a full range of sedentary exertional level work[2] (AR 19, 21, 22); (4) plaintiff could not perform his past relevant work (AR 20, 22); (5) plaintiff could perform other work that exists in the national economy (AR 21); and (6) plaintiff's allegations regarding his limitations were not totally credible. (AR 19-20, 22).

The Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 5-7, 11).

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2] As the ALJ noted: Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. (AR 21) (citing 20 C.F.R. § 404.1567). Social Security Ruling ("SSR") 83-10 instructs that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." See SSR 83-10. Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

    (1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

    (2)    Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

    (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

    (4)    Does the claimant possess the residual functional capacity to perform his past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

"[T]he ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry." Bustamante v. Massanari, 262 F.3d 949, 954

---

[3] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).

(9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court "may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error."  Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///
///
///

IV.   DISCUSSION

    A.    **The ALJ Materially Erred in Rejecting the Treating Physician's Opinion Without Appropriate Findings and Without Seeking Clarification from the Treating Physician**

Plaintiff argues that the ALJ failed properly to assess the opinion of plaintiff's treating physician, Dr. Broukhim, and that such error warrants reversal and remand. (Plaintiff's Motion at 5-11). This Court concludes that remand is appropriate as the ALJ materially erred in rejecting the treating physician's opinion without adequate articulation of the basis therefor, and without seeking clarification from the treating physician regarding the basis of certain opinions.

    1.    **Applicable Law Regarding the Assessment of Treating Physician Opinions**

In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).[4] The ALJ can reject the opinion of a treating physician

---

[4] A treating doctor's opinion can be discounted if the opinion is (i) unsupported by the doctor's own treatment notes; (ii) is conclusory, brief, and unsupported by the record as a whole or by objective evidence; and/or (iii) is based on the claimant's subjective complaints which are unsupported or properly discredited by the ALJ. See Connett, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]");

(continued...)

in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the

---

[4](...continued)
Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (variance between physician's opinion and his own treatment notes may be used to deem opinion untrustworthy), cert. denied, 519 U.S. 1113 (1997); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinion if it is conclusory and brief and unsupported by clinical findings); Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly could reject three evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions) (citation omitted). An ALJ may also favor (i) individualized medical opinions over check-off reports; (ii) more recent reports/opinions over older reports/opinions; and (iii) opinions based upon a lengthier treatment relationship over opinions based upon a shorter treatment relationship. Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports); 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i) (generally more weight given to opinion of source with lengthier treatment relationship); Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.1985) (earlier medical evaluations, based on claimant's condition several months before, do not constitute substantial evidence to rebut the conclusions of a later report); Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (treating physicians' most recent medical evaluation indicated that impairment was mild and presented no significant interference with claimant's ability to perform basic work-related activities); but see Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986) (ALJ properly rejected more recent report which lacked detailed findings and contradicted all earlier medical reports).

treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). In that event, the ALJ is instructed to consider certain specified factors in determining the weight to accord the opinion of the treating physician.[5] See 20 C.F.R. §§ 404.1527(d)(2)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p, Orn v. Astrue, 2007 WL 2034287, at *6 (9th Cir. July 16, 2007). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Orn, 2007 WL 2034287, at *6 (citation omitted).

### 2. Pertinent Facts

Plaintiff's treating physician, orthopedic surgeon Dr. Broukhim, began treating plaintiff for a back injury on August 22, 2002. (AR 293). Dr. Broukhim completed a comprehensive evaluation for plaintiff's worker's compensation claim dated May 7, 2004, in which he summarized plaintiff's various medical records and diagnosed plaintiff with, inter alia, "lumbar musculoligamentous strain/sprain injury with radiculopathy, disc degeneration at L4-L5 and L5-S1[,] with moderate disc protrusion at L4-L5 [and] spinal stenosis at L4-L5." (AR 293-306).[6] Dr. Brouhkim also completed a "Physical Residual Functional Capacity

---

[5] Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "[n]ature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii).

[6] The medical records summarized include: (i) x-rays from June 18, 2002 which were "negative" (AR 148, 300); (ii) "abnormal" electrical studies from November 11, 2002, indicating lumbar radiculopathy at the L4-L5 level (AR 154-156, 299); (iii) MRI reports from June 24, 2002 and April 3, 2003 which show L4-L5 and L5-S1 degenerative disc disease with a 4-5 mm

(continued...)

Questionnaire," dated July 9, 2004, finding that plaintiff could (i) frequently lift less than 10 pounds; (ii) stand and/or walk about four hours in an eight-hour day; and (iii) sit about two hours in an eight-hour day.  (AR 286-92).

At plaintiff's administrative hearing, medical expert Dr. Gurvey opined that plaintiff could (i) occasionally lift 20 pounds; (ii) frequently lift 10 pounds; (iii) stand and walk six hours out of an eight-hour day; and (iv) sit from four to six hours in an eight-hour day with the ability to alternate every couple of hours.  (AR 331).  When asked to reconcile his assessment with Dr. Broukhim's more restrictive assessment, Dr. Gurvey testified that his own conclusions were based on his review of the medical records, that Dr. Broukhim's conclusions to the contrary were "based on whatever [Dr. Broukhim] felt," adding "I don't know what he was thinking at the time.  My opinion is that they don't – they're not consistent with the records as I reviewed them."  (AR 332).

After the hearing, the ALJ requested that Dr. Jose perform a consultative examination.  Dr. Jose examined plaintiff, reviewed Dr. Broukhim's records, and conducted certain tests.  (AR 312-16).  Dr. Jose's impression from certain such tests was that plaintiff showed denervation and re-innervation processes consistent with left L4 nerve root compression.  (AR 315).  Dr. Jose's narrative report reflects that plaintiff (i) "should be able to do light work" where he can carry, push and pull 20 pounds occasionally and 10 pounds frequently; (ii) can stand and walk for about six to eight hours during the day, with periodic rest of sitting for two to

---

[6](...continued)
broad-based protrusion at L4-L5, and a 3 mm protrusion at L5-S1 with a posterior right annular tear (AR 149-50, 223-24, 301); (iv) a July 4, 2002 report of consultative examination diagnosing plaintiff with L4-L5 central herniated nucleus pulposis and L4-S1 protrusion based on a review of the June 24, 2002 MRI (AR 143, 301); and (v) February 7, 2003 and April 21, 2003 reports of plaintiff's secondary treating physician, orthopedic surgeon Dr. Haronian, noting plaintiff has degenerative disc disease and decreased disc signal at L4-L5 and L5-S1, with a "larger disc bulge" at L4-L5 that "is most likely causing compression neuropathy and pain," based on Dr. Haronian's review of plaintiff's MRI and an x-ray that showed plaintiff's lumbar spine and left knee were within "normal" limits.  (AR 182-90, 301).

9

three minutes at a time, every two to three hours; and (iii) can continuously sit unrestricted. (AR 314). However, in the residual functional capacity questionnaire which Dr. Jose completed on the same date as the narrative report, Dr. Jose opined that plaintiff could stand and/or walk less than two hours in an eight-hour work day based upon medical/clinical findings of low back pain. (AR 317-320). The ALJ did not refer to the latter opinion, and there is nothing in the record to explain the contradictory opinions of Dr. Jose regarding the number of hours ("six to eight" versus "less than two") plaintiff could stand and walk in an eight-hour day.[7]

Ultimately, it appears that the ALJ adopted a residual functional capacity for plaintiff that was not entirely advocated by any expert, but that most closely resembled Dr. Gurvey's assessment. (AR 19) (discussing medical opinions concerning plaintiff's residual functional capacity and reaching decision on same).

### 3. The ALJ Improperly Rejected the Opinion of Plaintiff's Treating Physician

In finding that plaintiff could perform a full range of sedentary work, which as noted above, requires sitting more than two hours in an eight-hour day, the ALJ

---

[7]Plaintiff complains that the ALJ abused his discretion by denying plaintiff the opportunity to cross-examine Dr. Jose – examination which might well have clarified the inconsistency in Dr. Jose's written opinions. (Plaintiff's Motion at 3-5) (citing Solis v. Schweiker, 719 F.2d 301 (9th Cir. 1983) (finding ALJ abused his discretion by failing to grant request to cross-examine "crucial" expert); see also AR 16-17 (ALJ discussing plaintiff's request). As discussed more fully in the next section, it appears from the record that the ALJ did rely on the tests Dr. Jose performed and his impression thereof to find plaintiff's subjective complaints of pain not credible. (AR 20) (discussing Dr. Jose's report). If Dr. Jose's report was "crucial" to the ALJ's decision, denying plaintiff's request to cross-examine Dr. Jose would have been an abuse of discretion. See Bradley v. Barnhart, 2002 WL 523584 *6 (N.D. Cal. April 2, 2002) (finding under Solis that ALJ abused discretion in denying claimant right to cross-examine vocational expert where ALJ relied on vocational expert's opinion in finding claimant not disabled); compare Calvin v. Chater, 73 F.3d 87, 90-92 (6th Cir. 1996) (noting that claimant must demonstrate need in a request for a subpoena for a due process right to cross examine a witness to arise). The Court need not definitively resolve this issue except to note that even if plaintiff prevailed on this issue, the Court would nonetheless remand rather than reverse.

rejected the Dr. Broukhim's assessment of plaintiff's limitations, stating: (i) the "physician appears to have taken [plaintiff's] subjective allegations at face value and merely reiterated those allegations when making assertions regarding [plaintiff's] health"; and generally that (ii) Dr. Broukhim's opinion was not "compatible with the record as a whole, including but not limited to, the testimony of the impartial medical expert [Dr. Gurvey]." (AR 20).

The ALJ did not adequately state his reasons for rejecting Dr. Broukhim's opinion.[8] First, the ALJ's bare assertion that Dr. Broukhim's opinion was not compatible with the medical record (including Dr. Gurvey's testimony), was insufficient. Merely stating that a treating physician's opinion is contradicted does not satisfy the requirement of stating specific, legitimate reasons for rejecting Dr. Broukhim's opinion or choosing to adopt the opinion of a non-treating medical professional over that of a treating physician. As summarized in note 6, supra, and referenced in Dr. Broukhim's detailed report, the medical record includes objective testing consisting of two MRI reports showing consistent injury to plaintiff's lumbar spine, an "abnormal" nerve conduction study indicating lumbar radiculopathy, and a secondary treating physician's opinion that plaintiff suffered from a condition that could cause him pain. While there was arguably conflicting medical evidence which included a "normal" nerve conduction study and a "normal" x-ray of plaintiff's lumbar spine and left knee, the ALJ did not set out and discuss the medical record in detail, did not state his interpretation thereof, and did not make any specific findings to support his conclusion that Dr. Broukhim's opinion was not compatible with the medical record. Magallanes, 881 F.2d at 751.

///

---

[8] Although defendants set forth facts which arguably provide reasons to discount the treating physician's opinions, this Court is limited to considering the reasons cited by the ALJ. See generally Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

1    Second, to the extent the ALJ rejected Dr. Broukhim's opinion allegedly
2 because Dr. Broukhim simply reiterated plaintiff's subjective complaints in
3 forming his assessment, the ALJ's conclusion is not supported by the record.  Dr.
4 Broukhim conducted a detailed review of plaintiff's medical records.  (AR 293-
5 306).  Without further clarification from Dr. Brouhkim, the ALJ had no basis to
6 conclude that Dr. Broukhim's opinion regarding plaintiff's limitations was based
7 solely on plaintiff's subjective complaints which, if discredited, would undermine
8 Dr. Broukhim's assessment.
9    Title 20 C.F.R. § 404.1512(e) provides that the Administration "will seek
10 additional evidence or clarification from your medical source when the report from
11 your medical source contains a conflict or ambiguity that must be resolved, the
12 report does not contain all of the necessary information, or does not appear to be
13 based on medically acceptable clinical and laboratory diagnostic techniques."  The
14 ALJ in this case did not seek such clarification from Dr. Broukhim.  See Smolen v.
15 Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to
16 know the basis of [the doctor's] opinions in order to evaluate them, he had a duty
17 to conduct an appropriate inquiry, for example, by subpoenaing the physicians or
18 submitting further questions to them.  He could also have continued the hearing to
19 augment the record") (citations omitted); see also Webb, 433 F.3d at
20 687(discussing ALJ's "special duty" fully and fairly to develop record).  In the
21 present case, the ALJ erred by rejecting Dr. Broukhim's opinion as allegedly
22 nothing more than a reiteration of plaintiff's subjective complaints without first
23 clarifying the record.[9]  Id.
24 ///
25 ///
26 ///
27
28    [9]As the vocational expert testified that an individual having the limitations found by Dr. Broukhim would not be able to perform any work, this Court cannot find the ALJ's error to be harmless.  (AR 343).

**B.   The ALJ Materially Erred in Rejecting Plaintiff's Subjective Complaints of Pain Without Making Adequate Findings**

Plaintiff alleges that the ALJ failed properly to assess plaintiff's subjective complaints of pain. (Plaintiff's Motion at 12-13). As the ALJ's sole articulated basis for rejecting plaintiff's credibility, was the purported and allegedly contradictory lack of objective medical evidence to support such allegations, and as an ALJ, in the circumstances present here, is not permitted to reject a claimant's subjective allegations of pain based solely on the absence of supporting objective medical evidence, this Court concludes that remand on this basis is appropriate.

**1.   Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 2007 WL 2034287, at *9 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, the ALJ may reject a claimant's testimony regarding the severity of his symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. Id. (citations omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

///

1    To find the claimant not credible, an ALJ must rely either on reasons
unrelated to the subjective testimony (e.g., reputation for dishonesty), internal
contradictions in the testimony, or conflicts between the claimant's testimony and
the claimant's conduct (e.g., daily activities, work record, unexplained or
inadequately explained failure to seek treatment or to follow prescribed course of
treatment).  Orn, 2007 WL 2034287, at *9; Robbins, 466 F.3d at 883; Burch, 400
F.3d at 680-81; SSR 96-7p.  An ALJ may not disregard such claimant's testimony
solely because it is not substantiated affirmatively by objective medical evidence.
Burch, 400 F.3d at 681.  However, the lack of medical evidence is a factor that the
ALJ can consider in his credibility assessment.  Id.

Questions of credibility and resolutions of conflicts in the testimony are
functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
and is supported by substantial evidence, it is not the court's role to "second-
guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**2.    Pertinent Facts**

Plaintiff asserted he could not work due to severe and intractable pain in his
back and bilateral lower extremities.  (AR 58).[10]  He testified that (i) he could sit
for 30 minutes and stand for 25 minutes at a time (AR 341); and (ii) he must lie
down during the day to rest for two hours due to his back pain.  (AR 342).

In finding plaintiff not disabled, the ALJ noted that plaintiff has a medically
determinable impairment that could reasonably cause or produce pain or plaintiff's
other alleged symptoms.  (AR 19).  The ALJ nonetheless found that plaintiff's
subjective complaints concerning his alleged limitations were not credible "in

---

[10]Throughout the course of treating plaintiff, Dr. Broukhim noted in his records plaintiff's persistent lower back pain that radiates down plaintiff's legs.  (AR 195, 197-201, 204-06, 208, 211-20, 222, 225-31, 233-69).  Plaintiff received a series of epidural steroid injections for his pain, but had to discontinue treatment due to severe abdominal pain after each injection.  (AR 152-53, 162, 237).

light of the discrepancies between [plaintiff's] assertions regarding his ability to work and information contained in the medical evidence. . .[as the complaints were] "not supported by the objective findings of [plaintiff's] own physicians or the objective findings of the consultative examiners." (AR 19-20).[11]  Specifically, the ALJ pointed to: (1) the February 2003 "normal" x-ray report for plaintiff's lumbrosacral spine and left knee; and (2) Dr. Jose's Nerve Conduction Study from January 2005 showing plaintiff's left common peroneal and posterior tibial nerves were "within normal limits." (AR 20, referencing AR 190 and 316).

### 3. Analysis

As noted above, once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.  That is precisely what the ALJ did in this case.

Because the ALJ's <u>sole</u> basis for rejecting plaintiff's credibility was a perceived inconsistency between such pain and the lack of objective findings, the ALJ erred.[12]

///
///
///
///
///

---

[11] While it is true that no physician opined that plaintiff would have to lie down to rest, plaintiff's treating physician did agree that plaintiff could continuously sit 30 minutes at a time, stand 20 minutes at a time, and must walk every 45 minutes, and take 15-20 minutes breaks every two hours throughout the course of an eight-hour work day. (AR 289-90).

[12] Defendant argues there exist other reasons, unspecified by the ALJ, that could justify the rejection of plaintiff's pain testimony statements. (Defendant's Motion at 6-8).  The Ninth Circuit has ruled that such arguments, however potentially persuasive, are not cognizable by the Court.  See Connett, 340 F.3d at 874 (district court cannot affirm on the basis of evidence the ALJ failed to discuss); Pinto, 249 F.3d at 847.

15


## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[13]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 15, 2007

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[13] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister, 888 F.2d at 603; see also Connett, 340 F.3d at 876 (remand is option where ALJ stated invalid reasons for rejecting claimant's excess pain testimony).